# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| STEWARD HEALTH CARE SYSTEM, | ) | |
| LLC, et al., | ) | Case No. 24-90213 (CML) |
| | ) | (Jointly Administered) |
| Debtors.[1] | ) | |
| | ) | |
| | ) | |
| Dr. Manisha Purohit, Dr. Diane Paggioli, | ) | |
| Dr. James D. Thomas, Dr. Thomas Ross, | ) | |
| Dr. Michael Regan, Dr. Peter Lydon, | ) | |
| Dr. Sridhar Ganda, and Dr. A. Ana Beesen, for | ) | |
| themselves and those similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | 4:25-mc-00461 |
| Steward Health Care System LLC, | ) | |
| IASIS Healthcare, LLC, and | ) | |
| Patrick Lombardo, in his role as Executive | ) | |
| Vice President for Human Resources for | ) | |
| Steward Heath Care System LLC; and | ) | |
| John and Jane Does, in their roles as | ) | |
| Committee Members and/or Management | ) | |
| Board Members, | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE IN OPPOSITION TO EMERGENCY MOTION FOR
## AN ORDER STAYING HEARING ON TURNOVER MOTION

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 2811 McKinney Avenue, Suite 300, Dallas, Texas 75204.

Defendant Steward Health Care System LLC respectfully submits this Response in Opposition to Plaintiffs' Emergency Motion for an Order Staying Hearing on Turnover Motion ("Mot.", Doc. 1.).

### Preliminary Statement

Since November 2024, these parties have litigated in the bankruptcy court an issue of great urgency to Debtors: whether money held in trust under Deferred Compensation Plans belongs to Debtors or, alternatively, to Plan participants like Plaintiffs. The Plans' plain language unambiguously states that the money is Debtors' property, not Plaintiffs'. And Debtors need to put that money to work right away. Without immediate access to Debtors' assets in the trust, there is significant risk that Debtors will be unable to continue these chapter 11 cases. The bankruptcy court, which has long presided over the cases, therefore found that "this contested matter [in the bankruptcy court] needs to proceed" and that "the debtors would be substantially harmed" if it doesn't. *See* (Tr. 69, 70, Doc. 2 Ex. 8.) The hearing in the contested matter is set for March 26, 2025.

Plaintiffs have had months and extensive discovery to try to resist the inexorable conclusion that the trust assets belong to Debtors, and Plaintiffs have come up empty. So through this "emergency" motion, Plaintiffs attempt to win by delay what they cannot win on the merits. Plaintiffs know Debtors need the trust assets immediately. To prevent the bankruptcy court from deciding the issue, Plaintiffs filed a copycat adversary proceeding on March 3, 2025—one that Plaintiffs themselves say "has near complete overlap" with the contested matter in the bankruptcy court. (Mot. ¶ 23 at n.4.) Why start all over again when the same issue is teed up for decision in weeks on a full factual record in another proceeding? One reason only: delay.

1

Here's how Plaintiffs' delay gambit works: when Plaintiffs filed the copycat adversary proceeding, they also moved to withdraw the reference, arguing that the adversary proceeding should be heard by this Court instead of the bankruptcy court. According to Plaintiffs, that means the contested matter must grind to a halt until this Court decides the motion to withdraw the reference in the adversary proceeding *and* until the newly filed adversary proceeding is resolved on the merits. Never mind that Plaintiffs already consented to the bankruptcy court's jurisdiction over the same issue by actively litigating the contested matter right up until the eve of trial. And ignore that Plaintiffs have not even asked to withdraw the reference in the contested matter itself. (*Id.*) ("The motion did not seek such relief.").

Plaintiffs' arguments to stay the contested matter—a matter pending before the bankruptcy court, not this Court—are all unavailing. Plaintiffs' lead argument is that decision on the merits in the contested matter would "raise[] critical constitutional concerns" by supposedly "moot[ing] the Motion to Withdraw the Reference." (Mot. ¶ 18.) But deciding the contested matter would not moot the withdrawal motion in the separate adversary proceeding. The withdrawal motion addresses *who* first hears the adversary proceeding (this Court or the bankruptcy court). The outcome of the contested matter will not moot that issue. Whatever the bankruptcy court decides on the merits of the contested matter, this Court may still determine whether the bankruptcy court or this Court should preside over the adversary proceeding. To be sure, the contested matter will determine *what* happens in the adversary proceeding (regardless of who hears it). But that is only because Plaintiffs waited until the contested matter was on the cusp of decision and then raised the same issues again in a newly filed adversary proceeding.

Even if decision in the contested matter would moot the withdrawal motion in the adversary proceeding, that is not ground for a stay. A motion to withdraw the reference does not automatically

stay even the proceeding that is the subject of the motion, let alone a *different* proceeding. *See* Bankruptcy Rule 5011(c) ("The filing of a motion for withdrawal of a case or proceeding … shall not stay … any proceeding … before the bankruptcy judge …."). The bankruptcy court's jurisdiction over the contested matter is not in dispute. Plaintiffs cannot strip that court of its power to adjudicate a question properly before it—and withhold money Debtors urgently need—by filing another proceeding raising the same issue.

Plaintiffs' argument that they meet the conventional stay criteria fares no better, as the bankruptcy court found. For starters, the motion to withdraw the reference in the adversary proceeding is untimely because Plaintiffs actively litigated the same issue in the contested matter and consented to the bankruptcy court's jurisdiction over it. Timeliness aside, the motion fails on the merits. There is no basis for mandatory withdrawal of the reference. Bankruptcy courts routinely apply ERISA to determine whether trust assets, like the disputed assets here, are property of a bankruptcy estate, and nothing prevents the bankruptcy court from doing so here. Plaintiffs will not be irreparably harmed if the bankruptcy court resolves that issue on the merits. Plaintiffs complain that they may be denied the assets they claim they are entitled to, but that will occur only if the court rules against them. An adverse decision after a full and fair hearing is not irreparable harm. Debtors and their estates, on the other hand, will be irreparably harmed by a stay. As the bankruptcy court found, Debtors are in a precarious financial condition and, without the trust assets, may be unable to continue these chapter 11 cases. This Court should deny the stay motion.

## Background

Debtors filed for Chapter 11 relief on May 6, 2024. Plaintiffs, who are former employees of Debtors, participated in Deferred Compensation Plans, under which they were able to defer income to reduce their tax liability. When employees chose to participate in the Plans, Debtors

placed money into so-called "rabbi trusts." Under the plain terms of the Plans and Trust Agreements, and consistent with applicable case law and regulatory guidance, the trust assets are owned by Debtors (the employers) until Debtors make payments to participating employees. The employees, in turn, have contractual rights to receive payments in the future—rights that give them unsecured claims against Debtors in these bankruptcy cases. The employees therefore do not own the assets, which Debtors set aside to fund the future payments.

Shortly after filing for Chapter 11 relief, Debtors filed an emergency motion seeking to, among other things, terminate the Deferred Compensation Plans. (Bankr. Doc. 15.) [2] The bankruptcy court (Lopez, J.) approved the relief the following day, authorizing Debtors to terminate the Deferred Compensation Plans retroactively as of the May 6, 2024 Petition Date. (Bankr. Doc. 86.) Debtors then notified each plan participant (including Plaintiffs) that the order had been approved, the Deferred Compensation Plans were terminated, and no further contributions would be made. *See* (Bankr. Doc. 4105) ("Rabbi Trust Reply" ¶ 43.) On August 12, 2024, Debtors again updated the participants, informing them that they were unsecured general creditors in the bankruptcy and could submit individual claims to the bankruptcy court. *Id.*

On November 24, 2024, Debtors moved for an order directing the trustees of the Deferred Compensation Plans to turn over the trust assets to Debtors. (Bankr. Doc. 3277) ("Rabbi Trust Motion.") At that point, Plaintiffs had numerous options. If they believed this issue must be decided by an Article III court (as they now claim), they could have moved to withdraw the reference for the contested matter. They didn't do that. Plaintiffs also could have moved to convert the contested matter to an adversary proceeding. They didn't do that either.

---

[2] Bankruptcy docket citations refer to Case No. 24-90213.

Instead, Plaintiffs actively litigated the contested matter in the bankruptcy court, thus consenting to the bankruptcy court's jurisdiction. On December 17, 2024, Plaintiffs objected to the Rabbi Trust Motion, asking the bankruptcy court to, among other things, impose a constructive trust over the trust assets for the participants' sole benefit and reform the Trust Agreements and Deferred Compensation Plans for the participants' sole benefit. (Bankr. Doc. 3497) ("Rabbi Trust Motion Objection.") Plaintiffs also requested, and later participated in, discovery relevant to the Rabbi Trust Motion. (*Id.*; *see also* Bankr. Doc. 3581.) In a footnote in their objection, Plaintiffs stated that they would later bring a class action if, in their estimation, discovery supported their claim.  (Rabbi Trust Motion Objection at 1 n.2.)

The bankruptcy court scheduled a hearing on the Rabbi Trust Motion for February 14, 2025. (Bankr. Doc. 3745.) At Plaintiffs' request, Debtors agreed to adjourn the hearing to March 11, 2025. (*See* Bankr. Doc. 3850.) On March 3, 2024, eight days before the hearing, Plaintiffs filed a class action complaint which raises, by Plaintiffs' own admission, substantially the same issues presented by the Rabbi Trust Motion. (Adv. Proc. No. 25-03066, Doc. 1.) The filing of the class action complaint created an adversary proceeding. At the same time, Plaintiffs also moved to withdraw the reference of the adversary proceeding and moved the bankruptcy court to stay the contested matter pursuant to Bankruptcy Rule 5011(c), pending resolution of the adversary proceeding. (Adv. Proc. No. 25-03066, Doc. 3) ("Initial Stay Motion.")

The bankruptcy court held a hearing on that motion on March 7, 2025. At the hearing, the bankruptcy court denied the motion, declining to stay the contested matter. (Tr. 69:15-17.) More specifically, the bankruptcy court concluded Plaintiffs had consented to litigate the contested matter in bankruptcy court and waived any right to stay the matter or have the issue decided in an adversary proceeding. (*Id.* at 69:15-17; 71:11-21.) Because Plaintiffs claimed they needed more

time to prepare for the contested matter hearing due to discovery delays, the bankruptcy court adjourned the hearing until March 26, 2025. (*Id.* at 70:9-71:2.)

The bankruptcy court also found that, because of Debtors' precarious financial position, "this contested matter needs to proceed." (*Id.* at 69:23-24.) Debtors presented uncontested evidence that, without access to the trust assets, Debtors may be unable to continue these chapter 11 cases. (Ex. A) ("Decl. of John R. Castellano ¶¶ 6-11.) Accordingly, the bankruptcy court found that "debtors would be substantially harmed" by further delays and recognized "a need to go forward" because of "the potential weaponization of the debtors' financial need." (Tr. 70:4-8.)

### Legal Standard

A motion to withdraw the reference "does not [automatically] stay proceedings in a case or affect its administration." Fed. R. Bankr. P. 5011(c). The bankruptcy judge, however, may issue a "may, on proper terms and conditions, stay a proceeding until the motion is decided." *Id.* The pendency of a motion to withdraw the reference does not "deprive the [b]ankruptcy [c]ourt of its ability to enter a final judgment in [the] proceeding." *In re Mem'l Prod. Partners LP*, No. 17-30262, 2018 WL 1807056, at *4 (Bankr. S.D. Tex. Feb. 9, 2018), *adopted by* No. H-18-411, 2018 WL 4501456 (S.D. Tex. Sept. 20, 2018).

The party seeking a stay must demonstrate (1) a likelihood that the motion to withdraw the reference will be granted, (2) irreparable harm to the movant if the stay is denied, (3) that Debtors and their estates will not be substantially harmed by the stay, and (4) that granting the stay will serve the public interest. *In re Antioch Co.*, 435 B.R. 493, 497 (Bankr. S.D. Ohio 2010); *In re Eagle Enters., Inc.*, 259 B.R. 83, 86-87 (Bankr. E.D. Pa. 2001). The moving party bears the burden of showing each factor supports granting the stay. *Antioch*, 435 B.R. at 496. And "granting of a stay

6

should be the exception—not the general rule." *In re City of Detroit*, 498 B.R. 776, 780 (Bankr. E.D. Mich. 2013) (quoting *Antioch*, 435 B.R. at 496).

**Argument**

Plaintiffs are not entitled to a stay. Continuing the contested matter in the bankruptcy court—where Plaintiffs have consented to jurisdiction and have not asked to withdraw the reference—would not raise any constitutional concerns. And Plaintiffs fail to satisfy even one of the four factors governing the stay analysis.

### I. A Stay is Not Constitutionally Required

Plaintiffs contend that Article III mandates a stay because the bankruptcy court's resolution of the contested matter would purportedly moot the motion to withdraw the reference and deprive this Court of constitutionally mandated jurisdiction over the withdrawal motion. (Mot. ¶ 18.) Plaintiffs are wrong on every score. Resolution of the contested matter will not moot the motion to withdraw the reference in the separate adversary proceeding. And even if it would, that is not a constitutional concern.

Plaintiffs never state why they believe a decision in the contested matter would moot the withdrawal motion in the adversary proceeding. Their argument seems to proceed from the premise—correct, as far as it goes—that once the first-filed contested matter is resolved on the merits, the same dispute will not be litigated again on the merits by the same parties in the later-filed adversary proceeding. But resolution of the contested matter will not prevent this Court from determining who presides over the adversary proceeding—the sole question presented by the motion to withdraw the reference. Resolution of the contested matter will simply mean that—whoever hears the adversary proceeding—there will be no merits questions left to decide there. That is true any time two matters involve the same dispute and the same parties. And it does not

violate the Constitution for the court where the issue was first raised to issue the first decision—particularly where, as here, Plaintiffs consented to jurisdiction in the bankruptcy court by litigating there until the eve of trial. *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669, 683-85 (2015) ("Article III is not violated when the parties knowingly and voluntarily consent to adjudication by a bankruptcy judge," and such consent may be "implied").

Even if the withdrawal motion in the adversary proceeding would be mooted, that would not be unconstitutional. Plaintiffs' argument would mean a stay is constitutionally mandated in any proceeding where a motion to withdraw the reference is filed, lest the bankruptcy court resolve the proceeding first and moot the withdrawal question. *See, e.g.*, *In re Lear Corp.*, 418 B.R. 47, 48 (S.D.N.Y. 2009) ("a bankruptcy court order dismissing an adversary proceeding moots a motion to withdraw [the] reference."). The rule is the exact opposite: a motion to withdraw the reference "does *not* [automatically] stay … proceedings … [before] a bankruptcy judge." Fed. R. Bankr. P. 5011(c) (emphasis added); *see also Eagle Enters.*, 259 B.R. at 86 ("The rule clearly states that the bankruptcy court is not required to abstain or stay proceedings pending the district[] court's decision on the motion to withdraw the reference."). If Plaintiffs were correct, Rule 5011 would be unconstitutional. But courts routinely deny stays in proceedings where a motion to withdraw the reference is pending. And since a withdrawal motion does not automatically stay even the proceeding where the motion was filed, it cannot automatically stay a different proceeding where all parties consented to jurisdiction.

Plaintiffs' reliance on *In re Parklane/Atlanta Joint Venture*, 927 F.2d 532 (11th Cir. 1991) is misplaced. *Parklane/Atlanta* did not concern mootness at all, and the Article III question it addressed is not presented here. In *Parklane/Atlanta*, a creditor/plaintiff simultaneously moved to withdraw the reference and for dismissal under 11 U.S.C. § 305 (1979). *Id.* at 534. The plaintiff

8

argued the bankruptcy court could not enter a dismissal order under § 305 because that provision "did not provide for appellate review by an Article III court." *Id.* The Eleventh Circuit held withdrawal of the reference was proper because otherwise, the only court that could ever adjudicate the motion would be a bankruptcy court, not an Article III court. *Id.* at 537; *see also In re Camden Ordnance Mfg. Co. of Ark, Inc.*, 245 B.R. 794, 805 n.11 (E.D. Pa. 2000) ("Notably, § 305 now permits appeal to a district court, thus negating the problem described in *Parklane/Atlanta*.").

This case does not present any similar issue. No statute says the questions in the contested matter may be decided by only one court and cannot be appealed. And even if it did, the Supreme Court's decision in *Sharif*, issued after *Parklane/Atlanta*, makes clear that Plaintiffs' consent to jurisdiction in the bankruptcy court over the contested matter would resolve any Article III concern. *See* 575 U.S. at 669, 684. There is nothing unconstitutional about the fact that a court, in the proper exercise of its jurisdiction, might issue a decision that renders other issues moot. If *Parklane/Atlanta* swept as broadly as Plaintiffs believe, that would be news to the courts in the Eleventh Circuit. These courts continue to recognize "that no stay is created simply as a result of the filing of a motion for withdrawal of the reference." *In re Perfect Home, L.L.C.*, 231 B.R. 358, 361 (Bankr. N.D. Ala. 1999) (denying stay where upcoming trial date was "critical to the efficient resolution of th[e] proceeding and the administration of the debtor's bankruptcy estate").

## II.    Plaintiffs' Motion for Mandatory Withdrawal is Unlikely to Succeed on the Merits

Plaintiffs also are not entitled to a stay because the motion is untimely and otherwise insufficient to satisfy the test governing mandatory withdrawal.[3]

---

[3] Although Plaintiffs also argued for permissive withdrawal before the bankruptcy court, they have abandoned that argument here by omitting it from their motion. Defendant reserves its rights to argue against permissive withdrawal for the reasons presented below.  *See* (Bankr. Doc. 4144.)

### A. The Motion is Untimely

As the bankruptcy court correctly concluded, the motion to withdraw is untimely. Plaintiffs already consented to jurisdiction in the bankruptcy court and asked it to decide the issue, and they cannot withdraw that consent by filing a separate proceeding raising the same question.

It is far too late to withdraw the reference in the contested matter, where the issue of who owns the assets in the rabbi trust was first presented and is now teed up for decision. "In a contested matter, a party should move to withdraw the reference within 21 days of the pleading initiating the contested matter." In re Bankruptcy Jurisdiction, General Order 2011–12 (S.D. Tex. Nov. 29, 2011). Plaintiffs filed the Rabbi Trust Motion Objection—which gave rise to the contested matter —on December 17, 2024. Plaintiffs did not move to withdraw the reference (in the copycat adversary proceeding) until March 3, 2025, *seventy-six days* after the Rabbi Trust Motion Objection and *fifty-five days* after General Order 2011-12's deadline.[4]

General Order aside, withdrawal of the reference in the contested matter would also be untimely under applicable caselaw. Although "timely" is not statutorily defined, "courts are in general agreement that a motion is timely if it was made as promptly as possible in light of the developments in the bankruptcy proceeding, or, more simply, if it was made at the first reasonable opportunity." *In re Childs*, 342 B.R. 823, 828 (M.D. Ala. 2006) (quoting *United States v Kaplan*, 146 B.R. 500, 503 (D. Mass. 1992)). "For gauging timeliness, the key issue is when the moving party was first aware nonbankruptcy federal laws must be dealt with in resolving the case." *In re*

---

[4] Plaintiffs note that General Order 2011-12 "clarifies that '[a] party's not having moved to withdraw the reference within these times does not waive a party's general right to challenge the bankruptcy judge's authority." (Mot. ¶ 23 at n.4) (quoting General Order 2011-12). That does not mean, as Plaintiffs suggest, that a withdrawal motion cannot be untimely. *See In re Lopez*, No. 09-70659, 2017 WL 3382099, at *5 (Bankr. S.D. Tex. Mar. 20, 2017) (finding motion to withdraw untimely and declining "to deviate from the guidance provided by" the General Order).

*Mahlmann*, 149 B.R. 866, 869 (N.D. Ill. 1993). "The reason for the timeliness requirement is to prevent parties from forum shopping, stalling, or otherwise engaging in obstructionist tactics." *Childs*, 342 B.R. at 828 (collecting cases). The ERISA issues that Plaintiffs now claim must be adjudicated by a district court were squarely presented by the contested matter. Plaintiffs could have moved for withdrawal when they first filed an objection. They didn't.

Beyond all that, Plaintiffs have already consented to bankruptcy court adjudication of the Rabbi Trust Motion. (Tr. at 67:2-9; 69:15-70:3.) Plaintiffs expressly requested and later participated in discovery in the contested matter. *See* (Rabbi Trust Motion Objection ¶ 36) (asking bankruptcy court to "defer a ruling on the Turnover Motion until the Participants are provided the opportunity to take discovery"). Discovery then proceeded and, at Plaintiffs' request, Debtors agreed to move the contested matter hearing from February 14 to March 11 to provide additional time to produce documents. *See* (Bankr. Doc. 3850.) Not until eight days before the rescheduled hearing did Plaintiffs demand to have these issues resolved by a district court in a copycat adversary proceeding and seek to stay the contested matter. That demand came too late.

Plaintiffs' timeliness argument is unavailing. They note that they sought withdrawal of the reference only in the later-filed adversary proceeding, not the contested matter, and contend the withdrawal motion is timely because it was filed the same day as the class action complaint. (Mot. ¶ 23 at n.4). In other words, after waiving withdrawal in the contested matter and consenting to jurisdiction in the bankruptcy court, Plaintiffs think they can start all over by filing a new proceeding that has, in their words, "near complete overlap" with the contested matter, and insisting that this Court hear it instead of the bankruptcy court. (*Id.*)

The Court should not countenance that gamesmanship, especially since Plaintiffs are trying to "weaponiz[e] … debtors['] financial need." (Tr. 70:7-8.) Allowing Plaintiffs to withdraw now

would give similarly situated parties "an incentive not to move to withdraw the reference until long after trials are scheduled, and then to wait to the eve of trial" to upend the process they consented to. *Childs*, 342 B.R. at 829. Rather than seeking withdrawal "at the first reasonable opportunity," Plaintiffs "fiddled whilst the bankruptcy court fires burned." *Id.* at 829-30. It is simply too late to take the pressing issues raised in the contested matter away from the bankruptcy court. *See* (Tr. 71:12-14) ("requesting an adversary proceeding at this point … has been waived").

## B. Plaintiffs Fail to Satisfy the Test for Mandatory Withdrawal

The motion's untimeliness aside, it fails on the merits. Withdrawal is required only "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). The "material and substantial consideration" test governs this inquiry. *Rodriguez v. Countrywide Home Loans, Inc.*, 421 B.R. 341, 347-48 (S.D. Tex. 2009). Under this test, withdrawal is mandatory when resolution of a claim "will involve an interpretation of the [non-bankruptcy] federal law rather than the mere application of well-settled law." *Id.* at 348. Conversely, "application of established federal law to particular facts has been determined to not constitute a 'significant and material' application." *Antioch*, 435 B.R. at 497.

The issues raised by the adversary proceeding (first presented in the contested matter) fail this test. The crux of the Rabbi Trust Motion is that the trust assets should be transferred to Debtors because these assets are property of the estate under Bankruptcy Code Section 541. This is a core issue of bankruptcy. While the bankruptcy court may need to apply ERISA to resolve the issue, that does not require withdrawal of the reference. Bankruptcy courts across the country regularly resolve these same questions by applying well-established law to determine whether Deferred Compensation Plans qualify as "top hat" plans under ERISA. *See, e.g., In re New Century Holdings,*

*Inc.*, 387 B.R. 95 (Bankr. D. Del. 2008) (applying ERISA to determine whether a deferred compensation plan was a "top hat" plan); *In re Alpha Nat. Res., Inc.*, 554 B.R. 787, 794 (Bankr. E.D. Va. 2016) (same); *In re Washington Mut., Inc.*, 450 B.R. 490 (Bankr. D. Del. 2011) (same); *In re Bill Heard Enters., Inc.*, 419 B.R. 858 (Bankr. N.D. Ala. 2009) (same); *In re It Grp., Inc.*, 305 B.R. 402 (Bankr. D. Del. 2004) (same). Notably, Plaintiffs themselves did not seek withdrawal of the reference in some of these cases presenting the same issue, even though they now contend withdrawal is mandatory. *See* (Tr. 34:1-4) ("We didn't ask for a withdrawal of reference in *New Century*, nor did we do so in *Nortel* . . . . [A]nd we could have.").

Plaintiffs' arguments to the contrary come up short on caselaw. They do not identify even one case where a bankruptcy court withdrew the reference to determine whether a deferred compensation plan qualified as a "top hat" plan. Even in cases presenting issues of ERISA preemption (an issue absent from this case), courts have declined to withdraw the reference because they are able to apply established law to the issues. *See Antioch*, 435 B.R. 498 n.4 ("Although the Movants assert the preemption question presents 'novel [ERISA] issues or issues of first impression' … this court, recognizing these issues may be quite complex, is unconvinced that these legal issues cannot be readily determined within the rubric of Sixth Circuit precedent.") (citation omitted).

As explained more fully in the Rabbi Trust Reply, to determine whether the Deferred Compensation Plans qualify as "top hat" plans, the bankruptcy court need only answer two questions: (1) whether the Deferred Compensation Plans are unfunded; and (2) whether the Deferred Compensation Plans are maintained by an employer primarily for the purpose of providing deferred compensation for a select group or management or highly compensated employees. *See Reliable Home Health Care, Inc. v. Union Cent. Ins. Co.*, 295 F.3d 505, 512 (5th

13

Cir. 2002). The Rabbi Trust Reply details a well-developed and well-established body of caselaw the bankruptcy court can apply to make this determination.

First, the bankruptcy court must determine whether the Deferred Compensation Plans are unfunded, *i.e.*, whether the trust assets remain property of the Debtors. To do so, courts examine the plain language of the relevant plan, trust and related documents, and whether the participant paid income taxes on the deferred compensation. Plaintiffs cannot, and do not dispute that the Plan Documents and Trust Agreements require the Deferred Compensation Plans to be unfunded. Nor do they claim to have paid taxes on the income deferred to the trusts.

Instead, Plaintiffs claim that, even though the Deferred Compensation Plans were indisputably unfunded, they should now retroactively be treated *as if they had been funded* because the Debtors continued to allow money to flow in and out of the Plans after Debtors became insolvent. *See* (Mot. ¶¶ 13, 40). But courts have categorically rejected these same arguments. *First*, courts have made clear that "[r]eformation is meant to effectuate mutual intent at the time of contracting," so plan documents cannot be "retroactively revised" based on conduct occurring after the fact. *See, e.g.*, *CIGNA Corp. v. Amara*, 563 U.S. 421, 450 (2011) (Scalia, J., concurring). *Second*, "defendants [cannot be] estopped to deny [the plans]' funded status," *Carrabba v. Tom Thumb Food & Drugs, Inc.*, No. 4:96-CV-651-A, 1997 WL 810030, at *3 (N.D. Tex. Dec. 30, 1997), particularly, where, as here, the Plan terms and trust documents are unambiguous on this point. *See High v. E-Sys. Inc.*, 459 F.3d 573, 580 (5th Cir. 2006) (where "the language of the . . . Plan … is not ambiguous, … the doctrine of ERISA-estoppel does not apply"). *Third*, Objectors "ha[ve] no standing" to raise a failure to comply with trust provisions regarding the distribution of proceeds during insolvency (which were designed to protect the general creditors, not Objectors) "as a bar to [the company]'s right to the proceeds" of the rabbi trusts, *Cortina v. Sovran Bank, N.A.*,

927 F. Supp. 439, 447–48 (S.D. Fla. 1994), and rabbi trusts cannot "magically become … no longer part of [the] estate—merely" because of actions inconsistent with their terms. *In re Outboard Marine Corp.*, 278 B.R. 778, 785–86 (N.D. Ill. 2002), *aff'd sub nom. Bank of Am., N.A. v. Moglia*, 330 F.3d 942 (7th Cir. 2003). The only case Plaintiffs cite, *Magasrevy v. Retirement Committee*, did not discuss any of these issues and merely held that, unlike here, where "the Plan promised to create a trust fund strictly separate from the general assets of the participating companies," the "Plan was not 'unfunded.'" No. 15-62143-CIV, 2016 WL 1321406, at *5 (S.D. Fla. April 5, 2016).

Next, the bankruptcy court must address whether the Plans are maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees, *i.e.*, the "selectivity test." The bankruptcy court can similarly resolve this prong by applying well-established law to the facts. The selectivity prong is disjunctive; eligible employees must either be management *or* highly compensated. *See Sikora v. UPMC*, 153 F. Supp. 3d 820, 825 n.6 (W.D. Pa. 2015), *aff'd*, 876 F.3d 110 (3d Cir. 2017). The Deferred Compensation Plans satisfy this test because their income eligibility thresholds were multiples of the average salary for Steward employees. (Rabbi Trust Reply ¶¶ 64-81.)

Plaintiffs attempt to complicate the test, arguing the bankruptcy court will need to resolve a split of authority on whether to apply a "substantial influence" test. (*See* Mot. ¶ 32.) Plaintiffs greatly exaggerate the cases they rely on, which do not make "substantial influence" or "bargaining power" a standalone test. Take *Tolbert v. RBC Cap. Mkts. Corp.*, which stated it "acknowledges, but does not expressly adopt, a 'substantial influence' or 'bargaining power' factor for use in determining the top hat issue," which "may be, at most, a part of the overarching 'selectivity' factor, and not a separate, independent test for purposes of the top hat exemption." No. H-11-0107, 2015 WL 2138200, at *5, *7-8 (S.D. Tex. Apr. 28, 2015). While Debtors argue the bankruptcy court is

not *required* to consider bargaining power in its analysis, the bankruptcy court is perfectly capable of reviewing the few cases that have treated it as a factor, deciding what, if any weight to afford it, and then examining the facts in context with other evidence. (*See* Rabbi Trust Reply ¶ 76.) If an issue like this is sufficient to mandate withdrawal, district courts should hear most bankruptcy cases.

Plaintiffs attempt to cloak in ERISA every issue raised in the Rabbi Trust Motion Objection, the class action complaint, and the motion to withdraw. But as set forth in the Rabbi Trust Reply, the remedy-related issues raised by Plaintiffs (such as constructive trust and reformation) require application of established *federal common law*, not ERISA. All ERISA says it that equitable relief is permissible to the extent it was available at common law. *See In re Cont'l Airlines*, 138 B.R. 442, 446 (D. Del. 1992) (holding, in context of ERISA claim, that the application of "federal common law" does not implicate Section 157(d)).

### III. Plaintiffs Have Not Demonstrated Irreparable Harm

Plaintiffs also fail to show they will be irreparably harmed absent a stay. Their claim (at Mot. ¶ 41) that they face "imminent and irreversible loss of their own earned compensation" absent a stay assumes they will lose on the merits—meaning the assets belong to Debtors, not to Plaintiffs. A full and fair hearing on the merits does not become irreparable harm simply because it results in an adverse decision. *See In re Dunes Hotel Assocs.*, No. 94-75715-W, 1997 WL 33344279, at *6 (Bankr. D.S.C. Aug. 1, 1997) ("All of [Plaintiffs'] arguments can, and undoubtedly will, be made in the context of the [Hearing]. This Court can fashion appropriate relief as part of [the Hearing] on the basis of [the] facts presented to it at that time.").

Plaintiffs contend they have not had a fair opportunity to litigate the contested matter on the merits because of discovery delays. (*See* Mot. ¶ ¶ 45-49.) Those arguments should be—and

were—addressed to the bankruptcy court presiding over the contested matter, not to this Court in a separate adversary proceeding. The bankruptcy court heard Plaintiffs' eleventh-hour complaints about the discovery process in the contested matter and accommodated them by postponing the hearing until March 26. After consenting to litigate the contested matter in the bankruptcy court, Plaintiffs cannot halt those proceedings because they want more relief than the bankruptcy court gave them. That is especially true because Plaintiffs did not raise their gripes about discovery with the court until eight days before the scheduled hearing, despite knowing that Debtors urgently need the assets in the rabbi trust. *See Texas v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021) ("Most of these [alleged irreparable harms] are self-inflicted and therefore do not count."); 11A Federal Practice and Procedure (Wright & Miller) § 2948.1 (3d ed. Updated June 2024) ("[A] party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted").

### IV. Plaintiffs Cannot Demonstrate a Lack of Harm to Debtors and Debtors' Estates

"In the bankruptcy context, a court must concern itself not only with harm to the nonmovant from a stay, but harm to the interests of the entire bankruptcy estate." *In re Dana Corp.*, No. 06–10354, 2007 WL 2908221, at *1 (Bankr. S.D.N.Y. Oct. 3, 2007) (citation omitted). As set forth in the Castellano Declaration and as found by the bankruptcy court, staying the contested matter would immensely harm Debtors and their estates.

Promptly resolving the contested matter and obtaining the $62 million in trust assets are critical to the viability of these chapter 11 cases. A stay of the hearing would risk triggering a critical loss of financing and/or use of cash collateral required to administer these cases and confirm a Chapter 11 plan, significantly harming the Debtors, their estates, and their stakeholders. The Debtors' FILO DIP Credit Agreement currently matures on March 28, 2025. *See* (Bankr. Doc. No. 4232). The Debtors anticipate receiving the trust assets in the first quarter of 2025 and using

17

these assets to reduce their indebtedness to their lenders. (Decl. of John R. Castellano ¶ 10.) Without access to these funds, a significant risk exists that the lenders will not extend further financing or consent to the use of cash collateral necessary for the continued administration of the Debtors' estates. (*Id.* ¶ 11.) A stay could derail these Chapter 11 cases, and Plaintiffs know it.

A stay therefore clearly "threatens to jeopardize[] the Debtors' prompt emergence from chapter 11 … and various agreements with key constituents." *In re Dana Corp.*, 2007 WL 2908221, at *1. And "the record clearly indicates that conducting" the hearing as previously agreed and proceeding with the contested matter "is imperative to the future of the Debtor and any delay could result in substantial and irreparable harm to the Debtor and the estate." *In re Chrysler LLC*, No. 09-50002 (AJG), 2009 WL 7386569, at *3 (Bankr. S.D.N.Y. May 20, 2009).

For these reasons, the bankruptcy court correctly found that the Debtors would "certainly" be "substantially harmed" by a stay. (Tr. 70:5:6.) This Court should deny the stay motion on this ground alone.

### V. Plaintiffs Fail to Show the Public Interest Favors a Stay

Denying the motion also serves the public interest. Plaintiffs contend this case "concerns whether an employer can evade federal protections designed to safeguard employees' deferred compensation." (Mot. ¶ 55.) But that presumes Plaintiffs will prevail on the very issue they are seeking to stay resolution of. "The only public interest in this litigation is to resolve it for all parties… in the most focused and expedient manner possible." *Antioch*, 435 B.R. at 503; *see also In re Iturbe*, No. CV 23-9857, 2025 WL 43276, at *5 (C.D. Cal. Jan. 7, 2025) (denying stay pending withdrawal motion where public interest favored expeditious resolution); *Detroit*, 498 B.R. at 793 ("[T]he public's interest and the [Non-Movant's] interest in the prompt resolution of this case coalesce."); *In re Tres Hermanos Dairy, LLC*, No. 10–14240, 2013 WL 6198219, at *5

18

(Bankr. D.N.M. Nov. 27, 2013) (finding that public interest favors denying stay "since granting the request likely would cause delay, and also because it is in the public interest to keep routine, core bankruptcy matters out of the District Court's busy docket"); *In re Kossoff PLLC*, No. 21-10699 (DSJ), 2024 WL 665913, at *7 (Bankr. S.D.N.Y. Feb. 16, 2024) (citing Bankruptcy Rule 1001 ("[t]hese rules shall be construed, administered, and employed ...to secure the just, speedy, and inexpensive determination of every case and proceeding.")).

<u>**Conclusion**</u>

For the reasons set forth herein, the Debtors request that the Court deny Plaintiffs' stay motion in its entirety.

Dated: March 20, 2025                                  Respectfully submitted,

                                                  */s/  Clifford W. Carlson*

                                                  **WEIL, GOTSHAL & MANGES LLP**
                                                  Clifford W. Carlson (24090024)
                                                  700 Louisiana Street Suite 3700
                                                  Houston, TX 77002
                                                  Telephone:  (713) 546-5248
                                                  Facsimile:  (713) 224-9511
                                                  Clifford.Carlson@weil.com

**WEIL, GOTSHAL & MANGES LLP**              **WEIL, GOTSHAL & MANGES LLP**
Gregory Silbert (admitted *pro hac vice*)        David J. Cohen (admitted *pro hac vice*)
Robert Berezin (admitted *pro hac vice*)         1395 Brickell Avenue, Suite 1200
767 Fifth Avenue                                Miami, Florida 33131
New York, NY 10153                              Telephone:  (305) 577-3100
Telephone:  (212) 310-8000                      Facsimile:  (305) 374-7159
Facsimile:  (212) 310-8007                      DavidJ.Cohen@weil.com
Greg.Silbert@weil.com
Robert.Berezin@weil.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 20, 2025, a true and correct copy of the foregoing
Response in Opposition to Plaintiffs' Emergency Motion for an Order Staying Hearing on
Turnover Motion was electronically served on all parties registered to receive electronic notice in
this case pursuant to the Court's CM/ECF filing system.

*/s/ Clifford W. Carlson*
Clifford W. Carlson
