UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: <br><br> STEWARD HEALTH CARE SYSTEM, LLC, *et al.*, <br><br> Debtors.[1] | ) ) ) ) ) ) ) ) ) | Chapter 11 <br><br> Case No. 24-90213 (CML) <br> (Jointly Administered) |
| Dr. Manisha Purohit, Dr. Diane Paggioli, Dr. James D. Thomas, Dr. Thomas Ross, Dr. Michael Regan, Dr. Peter Lydon, Dr. Sridhar Ganda, and Dr. A. Ana Beesen, for themselves and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Steward Health Care System LLC, IASIS Healthcare, LLC, and Patrick Lombardo, in his role as Executive Vice President for Human Resources for Steward Heath Care System LLC; and John and Jane Does, in their roles as Committee Members and/or Management Board Members, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 4:25-mc-00461 |

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR AN
ORDER STAYING HEARING ON TURNOVER MOTION**

    Movants Dr. Manisha Purohit, Dr. Diane Paggioli, Dr. James Thomas, Dr. Thomas Ross,

Dr. Michael Regan, Dr. Peter Lydon, Dr. Sridhar Ganda and Dr. A. Ana Beesen, participants in and

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

beneficiaries of certain deferred compensation plans (the "**Deferred Compensation Plans**") sponsored by the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), on their own behalf and on behalf of other participants in the Deferred Compensation Plans (collectively, "**Movants**"), by and through their undersigned counsel, respectfully submit this Reply in support of Movants' Emergency Motion for an Order Staying Hearing on Turnover Motion (the "**Motion to Stay**") and in response to Defendants' Response in Opposition to Emergency Motion for an Order Staying Hearing on Turnover Motion ("**Defendants' Response**").[2]

Contrary to Defendants' assertions, Movants are not, and have never been, engaging in a "delay game"; the Defendants' Response is a classic case of projection. Only Defendants have engaged in delay tactics and discovery abuse. Nor did Movants "consent" to proceeding with the contested matter commenced by the Turnover Motion; exactly the opposite. True: Movants timely objected to the Turnover Motion – as they had to do lest the Court grant it on consent. But Movants objected and preserved their right to conduct a class action from the outset and have never deviated from that course. The Bankruptcy Rules and Debtors' actions cannot – and do not – operate to box Movants into a corner – forcing a Hobson's choice between defaulting on the Turnover Motion (and losing a remedy) or waiving their due-process rights under the Constitution. It cannot be that Movants had one of two choices: proceed against judgment-proof Debtors or proceed without the rights to a fair and orderly process that the Constitution mandates for litigants to ensure just results and accurate fact finding.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

No litigation of the contested matter has taken place. All of the discovery conducted, such as it was, was pursuant to Bankruptcy Rule 2004, which is designed for pre-litigation discovery only, and the discovery to date was limited to that purpose.[3] If Defendants or Movants had wanted to conduct discovery related to the contested matter, that path involved different rules and different methods, as the bankruptcy court recognized.[4] The Movants have always simply exercised the rights to which they are entitled, and those rights include the right to file an ERISA class action and to have that class action heard and adjudicated by this Court, along with being afforded full and complete due process. Nothing less is deserved, given that what is at stake for the Movants is the loss of their retirement savings—savings that some of them are counting on to meet expenses right now. All that is at stake for Defendants is the funding of massive amounts of professional fees (likely in excess of $100 million) and other administrative expenses in a liquidating chapter 11 case in which it is also likely that the only constituents receiving any money are the professionals and the DIP lender – general creditors are highly unlikely to ever see a nickel.

Movants and their fellow employees are the doctors, nurses and support personnel that kept the hospitals afloat and the patients alive in the face of the financial mismanagement that brought these hospitals and related entities to the bankruptcy court. At stake is $62 million in compensation that they earned and chose to defer for retirement, having been actively encouraged by Defendants' management to do so (apparently while the Debtors were insolvent and could not pay their debts as they came due). By the Turnover Motion, Defendants seek to appropriate those deferred retirement savings to pay amounts apparently owed to the debtor-in-possession ("**DIP**") lender and

---

[3] The depositions that are scheduled to occur in the days before the March 26 and March 27 hearing are being done at Defendants' insistence; Movants had no choice but to participate in them to be prepared should the hearing go forward.

[4] ECF 2-8, Mar. 7 Tr. at 67.

estate professionals in this dying, "liquidating" chapter 11 case—where no reorganization is at stake, and where a conversion to chapter 7 would likely do the job more efficiently.

As soon as Defendants' ill intent was made clear by the filing of the Turnover Motion in November 2024, Movants objected and announced—on page 1 of their objection—that they would conduct *pre-litigation* discovery. Movants elaborated—also on page 1—that should pre-litigation discovery reveal a sound factual and legal basis, Movants would file a class action seeking plan-wide equitable relief under ERISA. This is the manner in which disputes over top-hat status are litigated: via ERISA and its procedures. Movants immediately sought to discover information via Bankruptcy Rule 2004. Despite Defendants' dilatory responses—producing virtually no documents for months and then the vast majority (over 5,000 documents) in the week before and the weekend following the March 7 hearing—Movants were able to discover more than enough facts to initiate a class action.

On March 3, 2025, Movants filed such a class action to, among other things, seek a judgment that the $62 million at stake was necessarily held in trust for the sole benefit of the employees who deferred that compensation and to obtain equitable relief to address that finding. Immediately, on the same day, Movants also timely filed with the bankruptcy court a motion to withdraw the reference with respect to the Class Action Complaint and a motion to stay further proceedings on the Turnover Motion, as contemplated by Bankruptcy Rule 5011.

At the March 7, 2025 hearing on the motion to stay, the bankruptcy court denied the requested stay, hinted on the record that it would recommend against mandatory withdrawal of the reference, and mused that perhaps Movants had somehow waived their right to file an adversary proceeding, without clearly articulating the legal ground on which such a waiver could occur [ECF 2-8 at 71]. But to date, the bankruptcy court has not actually made any recommendation to the

4

District Court as to withdrawal of the reference (as it is required by local rule to do) or, for that matter, entered any order or ruling arising out of the March 7 hearing.

By withholding that recommendation and intending to rule definitively on the Turnover Motion after still-accelerated hearings on March 26 and 27, the bankruptcy court has guarded for its own determination the overlapping issues in the Turnover Motion and the Class Action Complaint. Contrary to Defendants' assertions, it is not the operation of Bankruptcy Rule 5011 in isolation that Movants raise as a constitutional concern; it is the confluence of Bankruptcy Rule 5011 paired with the bankruptcy court's failure to timely make a recommendation to this Court on withdrawal of the reference that would create an unconstitutional insulation of the bankruptcy court's decision from this Court's review. In light of the bankruptcy court's failure to make a recommendation, unless this Court grants the Motion to Stay, Movants are relegated to extraordinarily expedited and incomplete discovery culminating in an "evidentiary" hearing next week. The result of such incomplete due process could prejudice the rights of all participants in the Deferred Compensation Plans in the Class Action Complaint—issues that, for the reasons set forth in the Motion to Stay, must be decided by an Article III Court. The Defendants' contention that ruling on the Turnover Motion would not moot the decision on the withdrawal of the reference is facially absurd. If the funds now sequestered are turned over and spent, what is left to decide in the class action and what is the point of withdrawing the reference if the Movants' savings are already gone?

The Class Action Complaint sets forth a putative class action that impacts the rights of hundreds of participants in deferred compensation plans protected by the full panoply of protections afforded by ERISA, unless Defendants meet their burden in demonstrating otherwise. The rights of the putative class members cannot be procedurally protected by the extraordinarily

abbreviated discovery schedule set by the bankruptcy court, nor does the bankruptcy court have the power to adjudicate the Class Action Complaint (or the overlapping issues raised in the Turnover Motion) given the substantial and material non-bankruptcy federal law at issue.[5] In particular, adhering to the bankruptcy court's unnecessarily abbreviated discovery schedule on the Turnover Motion would unconstitutionally abridge the putative class action plaintiffs' procedural due process rights: the schedule precludes full discovery of relevant facts, including the testimony of key third-party witnesses not yet subject to subpoena.

While the factual record is not yet fully developed, Movants are far from "com[ing] up empty" on the information produced by Defendants to date. *Compare* Defendants' Response at 1. Movants are currently subject to a protective order in the bankruptcy court. But with Defendants' consent, Movants would happily educate the Court at the hearing on the Motion to Stay as to the facts Movants have discovered, which Movants believe fatal to Defendants' ability to prove that the Deferred Compensation Plans qualify as the "rare species" of deferred compensation plans known as "top hat" plans exempt from ERISA protections. And of course, the burden is on the employer alleging top hat status.[6] The facts will show that the Deferred Compensation Plans have been noncompliant for years.

---

[5] Contrary to Defendants' assertion (*see* Defendants' Response at 9, n.3), Movants have not abandoned their argument on permissive withdrawal of the reference. It is explicitly preserved in the motion that is awaiting the bankruptcy court's recommendation to this Court.

[6] "Defendants bear the burden of proving that the [ERISA] Plan is a top hat plan." *Browe v. CTC Corp.*, 331 F. Supp. 3d 263, 294 & n.8 (D. Vt. 2018), *aff'd in part and vacated in part on other grounds*, *Browe v. CTC Corp.*, 15 F.4th 175 (2d Cir. 2021); *see also Alexander v. Brigham & Women's Physicians Org., Inc.*, 467 F. Supp. 2d 136, 142 (D. Mass. 2006), *aff'd*, 513 F.3d 37 (1st Cir. 2008) (noting that defendant "has the burden of proving that [deferred compensation plans] were each top hat plans"); *In re New Century Holdings, Inc.*, 387 B.R. 95, 110 (Bankr. D. Del. 2008) ("The burden of establishing the existence of a top hat rests on the party asserting that it is a top hat plan."); *Carrabba v. Randalls Food Mkts., Inc.*, 38 F. Supp. 2d 468, 476-78 (N.D. Tex. 1999) (stating that it was defendant's burden to prove ERISA plan was a top hat plan and holding

Moreover, of even greater concern is the fact alleged in the Class Action Complaint that Defendants continued to solicit deferrals of compensation into the subject plans in 2023 despite clear evidence, as expressed in a filed declaration by Defendants' financial advisor, that Defendants were hopelessly insolvent. If Defendants really believed these plans were top hat plans, then they were actively soliciting funds from their employees that they never intended to payout to them as retirement benefits. That fact alone would compel equitable relief.

As to the likelihood of success on the underlying motion to withdraw the reference, Defendants claim without merit that the motion is untimely, despite having been filed on the same day the Class Action Complaint was filed. Movants, like all responsible litigants, had a responsibility to ensure they had adequate facts to form the basis for the Class Action Complaint— a conclusion they reached quickly as soon as Defendants actually complied with their obligations under Bankruptcy Rule 2004. That compliance did not occur until three months after service of the 2004 Notice (other than with respect to a handful of irrelevant documents), and was characterized by the bankruptcy court as a "document dump" of "4,000 pages" "dropped" on Movants the night before the hearing.[7] Indeed, had Movants *not* undergone that exercise, Movants would surely be facing a motion to dismiss for failure to state a claim. Any delay from Movants' filing their 2004 Notice to the filing of the Class Action Complaint was thus solely of Defendants' making. As to the balance of the factors supporting mandatory withdrawal of the reference, Movants rest on the arguments set forth in the Motion to Stay.

Defendants' argument that Movants "consented" to the bankruptcy court adjudicating the dispute is equally disingenuous. Movants objected to the Turnover Motion as they were required

---

that defendant failed to meet that burden despite evidence that the plan was intended to be a top hat plan); *but see Sikora v. UPMC*, 876 F.3d 110, 113 (3d Cir. 2017).

[7] *See* ECF 2-8, Mar. 7 Tr. at 58-59.

to do to protect their rights. Otherwise, the bankruptcy court would have granted it for want of an objection. They also immediately filed the 2004 Notice in order to determine whether there were grounds to commence a class action—course of action previewed on page 1 of their objection. As set forth above, Movants discovered such grounds, commenced the class action and made the determination that relief for the putative class needed to be in the hands of a District Court given the dominant ERISA issues and procedures involved. Defendants' desire to conjure from these facts Movants' "consent" to the bankruptcy court's adjudication of these issues lacks foundation.

Indeed, this issue goes directly to the balancing of the harms, which weighs heavily in favor of the putative class action members. The members of the putative class earned the $62 million at issue and deferred those amounts to plan for their retirement. This reliance, and the financial destitution that would result if the funds are appropriated by Defendants to pay lender and professional fees, is exactly the type of harm that Congress sought to defend against when enacting ERISA. *See also* the declarations of certain Movants filed in support of the Motion to Stay. The competing interest at play is simply whether the proceeds from the sale of Defendants' assets will be distributed via a chapter 11 plan of liquidation, or whether their chapter 11 cases will be converted to chapter 7 and the assets distributed by a chapter 7 trustee—not whether Defendants will be able to reorganize and see another day. "Emergence" from chapter 11 in this case is tantamount to death therein. In failed chapter 11 cases, sometimes professional are not fully paid; that is a risk of the work. It is not a reason to appropriate the retirement savings of employees without adequate due process.

## Conclusion

Whether the Deferred Compensation Plans are ERISA-protected or exempt from ERISA protections as "top hat" plans is a decision best made by an Article III Court once a timely motion

to withdraw the reference is made, as is the case here. Only this Court can finally decide whether to withdraw the reference, and statutory and constitutional concerns mandate that the bankruptcy court not take any action to prevent that decision. Based on the foregoing, Movants respectfully request that the Court grant the Motion to Stay.

Dated:  March 20, 2025  /s/ Allan B. Diamond
Allan B. Diamond, Esq.
Christopher D. Johnson, Esq.
Brian Hogue, Esq.
Diamond McCarthy, LLP
909 Fannin Street, 37th Floor
Houston, TX  77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5199
Email: adiamond@diamondmccarthy.com
chris.johnson@diamondmccarthy.com
brian.hogue@diamondmccarthy.com

Robert J. Keach, Esq., *admitted pro hac vice*
Paul McDonald, Esq., *admitted pro hac vice*
Lindsay K. Milne, Esq.
John A. Woodcock III, Esq*., admitted pro hac vice*
**BERNSTEIN, SHUR, SAWYER & NELSON**
100 Middle Street
P.O. Box 9729
Portland, ME  04104-5029
Telephone: (207) 774-1200
Facsimile: (207) 774-1127
Email:  rkeach@bernsteinshur.com
pmcdonald@bernsteinshur.com
lmilne@bernsteinshur.com
jwoodcock@bernsteinshur.com

*Counsel for the Movants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2025, a true and correct copy of the foregoing pleadings was served by email to all parties registered to receive electronic notice in this case pursuant to the Court's CM/ECF filing system.

/s/ Allan B. Diamond
Allan B. Diamond